IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **MICHAEL McFARLAND,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-01294 |
| ) | |
| **TENN. DEPT. OF CORRECTIONS,** ) | Judge Trauger |
| **C.B.C.X.,** ) | |
| **DAVID ELAM, Unit Manager,** ) | |
| **LINDA THABET, CO,** ) | |
| **JOHN DOE I, Drug Counselor,** ) | |
| **JOHN DOE II, Classification Coordinator,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Michael McFarland, a state prisoner incarcerated at the Morgan County Correctional Complex, filed a complaint under 42 U.S.C. § 1983, asserting claims based on events that occurred when he was incarcerated at the Charles Bass Correctional Complex ("CBCX"). The complaint is before the court for an initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

### I. FACTUAL ALLEGATIONS

In his complaint, the plaintiff named as defendants David Elam, Unit Manager/Head Drug Counselor at CBCX; Linda Thabet, a correctional officer ("C.O.") assigned to the "T.C. Drug Unit" at CBCX; John/Jan Doe I, Counselor for the Drug/Alcohol Program at CBCX; and John/Jan Doe II, Classification Coordinator for the Drug/Alcohol Program at CBCX. The plaintiff names all these defendants in both their individual and official capacity. In addition, although the plaintiff does not include them among the defendants identified in the "Parties" section of his complaint, the plaintiff listed the Tennessee Department of Correction and CBCX as defendants in the case caption of his complaint. The court therefore presumes that the plaintiff intended to name these entities as defendants as well.

The plaintiff alleges that CO Douglas Busby performed an allegedly random search of the plaintiff's cell on December 27, 2011. Busby told the plaintiff he "found what he was looking for," but he did not tell the plaintiff what that was or issue a disciplinary report or write-up. The next day, the plaintiff was informed by

defendant Linda Thabet that he was being dismissed from the drug rehabilitation program ("drug program") at the prison because of what he had done. The plaintiff protested that he did not know what he had done and that he had not been issued a disciplinary report or write-up. The plaintiff later performed research at the prison library on the TOMIS database and verified that a disciplinary report was on his record because of a cell phone having been found in his cell on December 27, 2011. The plaintiff asked David Elam and Thabet to be allowed to stay in the drug program because he was only two weeks shy of completing the program. Elam and Thabet refused this request. The plaintiff states that he is African American, and alleges that other white inmates with more serious infractions had been permitted to do a "work sanction" while staying in the drug program.

The plaintiff filed a grievance on January 5, 2012, alleging he had been unfairly dismissed from the drug program, and that the dismissal was racially motivated. He lists in his complaint examples of white inmates who had been found to have tobacco and other items in their cells (multiple times in the case of one inmate) but who were given a work sanction instead of being dismissed from the drug program. He also stated (in his grievance) that he believed he had been retaliated against for having filed a grievance.

In response to the January 5 grievance, Deputy Warden Charles Simmons recommended that McFarland be placed back in the drug program because the disciplinary report had not been properly served on the plaintiff and he had never actually been convicted on the charge. A week later, CBCX "brought McFarland up for a special reclass based" on the same disciplinary report that remained on TOMIS even though the plaintiff had still not been served with or convicted of the disciplinary offense. He was reclassified for transfer to Morgan County Correctional Complex ("MCCX"). The plaintiff filed two grievances related to the reclassification, one alleging retaliatory transfer and the other related to removing the disciplinary report from TOMIS. The grievance chairperson consolidated the grievances and denied them initially. The plaintiff was transferred to MCCX before he received a final response to his grievances. The plaintiff insists that there was no legitimate reason for transferring him to MCCX prior to his completion of the drug program, particularly in light of Deputy Warden Simmons's recommendation that he be permitted to complete the program.

Based on these facts, the plaintiff alleges that he was denied due process and equal protection, and that he was subjected to discrimination and retaliation for challenging his dismissal from the drug program.

-2-

Case 3:12-cv-01294   Document 3   Filed 01/11/13   Page 2 of 6 PageID #: 140

More specifically, he claims that Elam, Thabet, and Doe I violated his equal-protection rights and intentionally discriminated against him on the basis of race when they dismissed him from the drug program in violation of prison regulations for allegedly violating a "cardinal rule." In addition, he was never actually convicted of this offense, but the defendants did not dismiss other white inmates who were actually served with a disciplinary report and convicted on the charges. The plaintiff also alleges that Elam, Thabet and Doe I's decision to dismiss him from the program was arbitrary and in violation of mandatory TDOC policy, and therefore violated his right to equal protection and due process on that basis as well. The plaintiff also alleges that all four defendants—Elam, Thabet, Doe I, and Doe II—were involved in the decision to transfer him from CBCX to MCCX, and that the decision was retaliatory insofar as it was based on the plaintiff's exercise of his First Amendment right to file a grievance related to the drug-program issue.

The plaintiff demands immediate transfer back to CBBX and reinstatement in the drug program, as well as compensatory and punitive damages.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss a civil complaint or any portion of a complaint filed *in forma pauperis* that (1) fails to state a claim for which relief can be granted, or (2) is frivolous. Section 1915A(a) similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*,

551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. LAW AND ANALYSIS

To state a claim under § 1983, a plaintiff must (1) identify a right secured by federal law or the United States Constitution, and (2) demonstrate that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *West v. Atkins*, 487 U.S. 42, 48 (1988); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). Both parts of this test must be satisfied to support a claim under § 1983. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

As an initial matter, the plaintiff may not maintain a § 1983 action against the Tennessee Department of Correction. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Hafer v. Melo*, 502 U.S. 21, 25 (1991), and the State of Tennessee has not consented to civil rights suits in federal court. *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986); *see also Mayers v. Campbell*, 87 F. App'x 467, 471 (6th Cir. 2003) (confirming TDOC is immune from suit in federal court). In addition, the State of Tennessee (acting through the Tennessee Department of Correction) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). The court will therefore dismiss any claims against the Tennessee Department of Correction and will terminate that party as a defendant.

The plaintiff's claims against CBCX are also barred by the Eleventh Amendment because the prison is an administrative unit of TDOC. Moreover, an express requirement of 42 U.S.C. § 1983 is that the defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (considering whether a

-4-

municipality is a "person" for purposes of § 1983). Neither a prison nor a state department of correction is a "person" within the meaning of § 1983. *Will*, 491 U.S. at 71. CBCX is therefore not subject to a § 1983 action and will likewise be dismissed.

The plaintiff purports to sue the four individually named defendants in both their individual and official capacity. Because the defendants are employed by the state, the official-capacity suit against them for money damages is tantamount to suit against the state itself. The Eleventh Amendment also bars suit against state officials in their official capacity unless Congress has abrogated immunity or the state has waived it, *Will*, 491 U.S. at 71; *Berndt*, 796 F.2d at 881, neither of which applies here. The claims for monetary damages against the individual defendants in their official capacity must therefore be dismissed.[1]

The complaint does, however, state at least one colorable claim against the individually named defendants in their individual capacity based on the allegations of retaliation in violation of the plaintiff's rights under the First Amendment. To state a claim for first-amendment retaliation, a plaintiff must allege that he engaged in protected activity; the defendant took an adverse action that is capable of deterring a person of "ordinary firmness from continuing to engage in that conduct"; and "the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)). The plaintiff here alleges that he engaged in protected conduct when he filed prison grievances, and that he was removed from participation in a rehabilitative program and transferred to a different prison as a result of his engagement in protected conduct. The complaint adequately alleges facts supporting each element of a claim of first-amendment retaliation. Because the complaint states at least one colorable claim against each of the individual defendants, the complaint will be permitted to proceed against those defendants.

---

[1] A state official, acting in his official capacity, may be sued for injunctive relief "because "official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Case 3:12-cv-01294   Document 3   Filed 01/11/13   Page 5 of 6 PageID #: 143

**IV. CONCLUSION**

For the reasons set forth herein, the plaintiff's claims against the Tennessee Department of Correction and the Charles Bass Correctional Complex will be dismissed on the basis that these defendants are immune from suit under the Eleventh Amendment. The claims for monetary relief against the individual defendants in their official capacity will likewise be dismissed on Eleventh Amendment grounds. The remaining claims will, at this stage in the proceedings, be permitted to proceed.

An appropriate order is filed herewith.

_____
Aleta A. Trauger
United States District Judge

-6-

Case 3:12-cv-01294   Document 3   Filed 01/11/13   Page 6 of 6 PageID #: 144