IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL McFARLAND | ) |
| | ) |
| v. | ) No. 3:12-1294 |
| | ) Judge Trauger/Bryant |
| DAVID ELAM, ET AL. | ) |

To: The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This matter is on referral to the undersigned for, inter alia, pretrial management of the case, including recommendation for ruling on any dispositive motions. (Docket Entry No. 4) Currently pending is a motion for summary judgment by defendants David Elam, Dr. Nolson Phillippe, and George Keeling. (Docket Entry No. 25) For the reasons stated below, the Magistrate Judge recommends that defendants' motion for summary judgment be GRANTED.

## Statement of the Case

On December 27, 2011, during a random search of the inmate plaintiff's cell, prison officials at the Charles Bass Correctional Facility ("CBCX") discovered a cell phone and cell phone charger, both prohibited under Tennessee Department of Correction Policy ("TDOCP") 502.05(VI)(A)(50), which classifies the offense as a Class-A infraction. (Docket Entry No. 1 at 4; Docket Entry No. 63-4 at 3) Plaintiff admits that he possessed the cell phone. (Docket Entry No. 63-5 at 18, ¶¶ 8-9) The following day, defendant Thabet informed plaintiff that he was being dismissed from the drug treatment program ("the

Program") for violating a "Cardinal Rule" of the Program -- commission of a Class A offense. (Docket Entry No. 1 at 4, ¶ 2, and 51)

Plaintiff objected because he was never served with a copy of the disciplinary write-up or prosecuted by the disciplinary board. Id. at 4, ¶ 2. After confirming that the charges were reflected on his personal record (Docket Entry No. 63-2 at 4), plaintiff requested that defendant Elam reconsider his dismissal from the Program, proposing instead that plaintiff be allowed to serve a "work sanction." (Docket Entry No. 1 at 5, ¶ 11) In support of his request, plaintiff cited three Caucasian inmates that were allowed to remain in the program after they committed infractions of the TDOCP, but plaintiff's request was denied. Id. at 5-6, ¶¶ 11-12.

On January 5, 2012, plaintiff filed a grievance contesting his removal from the Program. Id. at 5, ¶ 12. Plaintiff argued that, absent compliance with the TDOCP, defendants lacked grounds to dismiss him from the Program, and none of the grounds for non-disciplinary dismissal (i.e., inability to complete the Program through no fault of the inmate, based on a medical issue or otherwise) were presented in his case.[1] Id. at 30-31. Plaintiff again cited three Caucasian inmates, all convicted of disciplinary infractions, who were allowed to remain in the Program with only a work sanction. Id. at 6, ¶ 12, and 31.

Plaintiff's initial grievance was denied as being procedurally barred, and that determination was affirmed on appeal by the Deputy Commissioner of Operations for the Tennessee Department of Correction. Id. at 42-43. However, Deputy Warden Charles

---

[1]TDOCP 513.07(VI)(E)(3) states in relevant part: "The Program Manager or Treatment Team can request that an inmate be removed from a treatment Program. All disciplinary dismissals are to follow procedures found in Policy #505.07 and will require the issuance of a Class A-disciplinary report." (Docket Entry No. 63-6 at 6)

Simmons wrote to plaintiff that he had intervened on plaintiff's behalf and that the treatment team was considering readmitting him to the Program. Id. at 6, ¶ 13, and 32. Plaintiff was not readmitted to the Program, however, and on January 13, 2012, CBCX officials reclassified plaintiff and planned to transfer him to a different facility. Id. at 6-7, ¶ 14.

On January 16, 2012, plaintiff filed a grievance objecting to his reclassification and transfer. Id. at 35-36. Plaintiff argued that the cell phone infraction was insufficient grounds to transfer him and cited an "upcoming surgery" and his "mental issues" as additional reasons why he should remain at CBCX. Id. at 36. Plaintiff also cited four other individuals who were not reclassified and transferred after committing similar infractions. Id. However, the grievance chairperson denied this grievance as a second attempt to overturn plaintiff's dismissal from the treatment Program. Id. at 34. On appeal, Deputy Warden Simmons concurred with the grievance chairperson.[2] Id. at 38.

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed the instant complaint on December 12, 2012, alleging that defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment when they intentionally discriminated against him based upon his race in dismissing him from the drug treatment Program. He further alleges the denial of his due process rights based upon his removal from the Program for a Class A infraction without having been convicted on the underlying charges. Finally, he alleges retaliation in his reclassification and transfer to another facility due to the

---

[2]Plaintiff filed another grievance on January 16, 2012, to have the cell phone incident removed from his TOMIS record, but that grievance was denied as untimely by CBCX officials. (Docket Entry No. 1 at 39-43)

grievances he filed over this treatment. (Docket Entry No. 1)

Plaintiff seeks damages, both compensatory and punitive, under 42 U.S.C. § 1983, as well as injunctive relief in the treatment of prisoners during transport from facility to facility. (Docket Entry No. 1) Defendants seek summary judgment, asserting (1) that plaintiff's race played no part in the decision to dismiss him from the drug treatment Program, (2) that plaintiff has no liberty interest in remaining in the Program, and thus he was not entitled to process when being removed from it, and (3) that plaintiff's grievances were not a consideration in defendants' decision to transfer plaintiff to another prison facility. (Docket Entry No. 62)

## Legal Analysis

### (1) Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be rendered if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In determining whether the movant has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1356 (1986). In order to defeat the motion, the nonmoving party may not merely rest on conclusory allegations contained in the complaint, Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986), but must affirmatively demonstrate "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).

### (2) Equal Protection Claim

Defendants argue that plaintiff's "race was not a factor in their decision to release [him] from the therapeutic community." (Docket Entry No. 63 at 3) Rather, affidavits from defendants Elam and Dr. Nolson Phillippe assert that "[t]hey recommended [plaintiff's] dismissal from the Program due to [his] possession of a cellular telephone, a Class A offense behavior." Id. Defendants argue that this behavior, which plaintiff admitted and which amounts to a violation of a "Cardinal Rule" of the Program,[3] provides a sufficient nondiscriminatory purpose for plaintiff's dismissal. Id. In response,[4] plaintiff maintains that his dismissal from the Program when Caucasian inmates were permitted to remain in the Program after committing similar offenses demonstrates that defendants's stated reason is pretextual.

"In order to establish a violation of the Equal Protection Clause, an inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of the prison officials." Copeland v. Machulis, 57 F.3d 476, 480 (6th Cir. 1995) (citing Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265-66 (1977)). "Determining whether invidious discriminatory purpose was a motivating factor demands an inquiry into such circumstantial evidence of intent as may be available." Id. at 481.

---

[3]TDOCP 513.07(VI)(E)(3)(c) provides "a listing of Cardinal Rules that result in immediate disciplinary dismissal: (1) Violation of institutional rules considered a Class A offense as outlined in Policy #502.04 . . . ." Subsection (d) requires that "[a]ll disciplinary dismissals for program rule violations must have proper documentation of the actions that led to the participant's dismissal and shall be approved by the Warden or his/her designee . . . ." (Docket Entry No. 63-6 at 7)

[4]Plaintiff has not filed a freestanding response brief, but included a five-page response to defendants' summary judgment motion with his "Notice of Filing Exhibits." (Docket Entry No. 86-1 at 114-18)

The burden rests on plaintiffs to show, by a preponderance of the evidence, that they were treated differently than similarly situated non-minorities. *United States v. Jennings*, 985 F.2d 562, 1993 WL 5927, at *4 (6th Cir. Jan. 13, 1993). Once such a prima facie case is made, the burden shifts to defendants to either 1) rebut the presumption of unconstitutional action by articulating a race-neutral reason for its action, or 2) identify a compelling government interest for its race-based conduct. *Id.* (citing *Arlington Heights*, 429 U.S. at 270-71 n.20).

In this case, the circumstantial evidence proffered by plaintiff -- the fact that other, white inmates were allowed to remain in the Program despite disciplinary issues -- is not sufficient for a jury to conclude that defendant's motivations were racially based. This is so primarily because the white inmates cited by plaintiff were not similarly situated to him, in that they did not commit offenses which were classified as Class A offenses. The individuals cited by plaintiff were convicted of possessing tobacco or other contraband such as lighters or tattoo guns. (Docket Entry No. 1 at 6; Docket Entry No. 86-1 at 5-12) Under TDOCP 502.05(VI)(A)(9), (54), those infractions are either Class B or C infractions. (Docket Entry No. 63-4 at 2, 6) The record reflects that the inmate principally relied upon by plaintiff as a comparator, Steven G. Holladay, was charged with, and pled guilty to, a Class C infraction. (Docket Entry No. 86-1 at 6-12) Plaintiff's infraction, admitted possession of a cellular phone, is considered either a Class A or B infraction under TDOCP 502.05(VI)(A)(50), and so put him in violation of the Program's "Cardinal Rules," which by their terms prohibit continuance in the Program in the face of "[v]iolation of institutional rules considered a Class A offense." (As noted above, plaintiff admitted to violating the institutional rule against cell phone possession; the Cardinal Rules do not require conviction on a Class A charge before continuance in the Program is jeopardized.) According to the Program guidelines, while violation of an institutional rule considered a Class A offense is

6

grounds for immediate dismissal from the Program, lesser rule violations "can" result in disciplinary dismissal if they are "[p]articularly grievous or repeated. . . ." (Docket Entry No. 63-6 at 7, TDOCP 513.07(VI)(E)(3)(a), (d))  Thus, because the individuals cited as comparators by plaintiff were not subject to immediate dismissal from the Program due to the class of their convictions or other criteria which would place them in violation of the Cardinal Rules, they are not similarly situated to plaintiff.  Therefore, plaintiff has failed to create a triable issue of purposeful racial discrimination, and summary judgment in favor of defendants is appropriate on this claim.

### (3) Due Process Claims

Relying on Sandin v. Connor, 525 U.S. 472 (1995), defendants argue that plaintiff "has no liberty interest in participation in prison programs, and therefore has no due process rights in the consideration of his termination from the therapeutic community." (Docket Entry No. 63 at 4)  Plaintiff argues here, as he alleged in his complaint, that he "had a constitutionally protected property interest in being [in] the substance abuse program" and that defendants failed to afford him the process he was due prior to dismissing him from that program.  (Docket Entry No. 86-1 at 115)

"The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner," but only where actions of prison officials threaten to restrain an inmate in "an unexpected manner . . . [or] impose [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 525 U.S. at 478, 484.  It is well settled that prisoners have no cognizable right to participate in rehabilitative or educational programs.  See Rhodes v. Chapman, 452 U.S. 337, 348 (1981); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Canterino v. Wilson, 869 F.2d

7

948, 952-54 (6th Cir. 1989).

Nevertheless, plaintiff asserts that his claims are cognizable here because dismissal from the Program will act to prolong his incarceration. (Docket Entry No. 1 at 21, ¶ 46) According to plaintiff, completion of a drug treatment program was a recommendation of the sentencing judge and he will not be considered for parole if he has not successfully completed the Program. Id. Plaintiff's argument is unavailing. Neither the Constitution nor Tennessee law confers a liberty interest in a reduced term of incarceration after a sentence has been imposed, or in receiving early parole. See Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7 (1979); Wright v. Trammell, 810 F.2d 589, 590-91 (6th Cir. 1987). Accordingly, with no protected interest in gaining admission to a rehabilitation program, or in remaining in such a program once admitted, plaintiff's procedural due process claim is without merit.

Moreover, while plaintiff pled a substantive due process claim (Docket Entry No. 1 at 17-18, ¶¶ 36-39), it is clear, as defendant argues, that plaintiff has not created a triable issue as to whether his dismissal from the Program imposed an atypical and significant hardship on him in relation to ordinary prison life, much less as to whether defendants' actions could be found by a reasonable juror to be "an egregious abuse of governmental power" or otherwise "shock[ing to] the conscience" under a substantive due process analysis. See Cale v. Johnson, 861 F.2d 943, 949-51 (6th Cir. 1988), overruled on other grounds by Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999).

### (4) Retaliatory Transfer Claim

In order for plaintiff to establish his claim of First Amendment retaliation for his filing of grievances over his dismissal from the Program, plaintiff must show (1) that he

was engaged in conduct protected by the First Amendment; (2) an adverse action by prison officials that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the protected conduct and the adverse action. Thaddeus-X, 175 F.3d at 394. In affidavits supporting their motion, defendants Phillippe and Keeling, the two individuals composing the board responsible for plaintiff's transfer, testify that plaintiff was transferred due to his dismissal from the Program. (Docket Entry No. 63-3 at 1-2; Docket Entry No. 63-8 at 1-2) They further testify that neither of them knew prior to ordering plaintiff's transfer that he had filed a grievance over his dismissal from the Program. Id. Thus, defendants assert that without knowledge of plaintiff's grievance, there cannot be a causal connection between his grievance and their decision to transfer him. Alternatively, defendants assert that plaintiff's transfer from the general population at CBCX to the general population of another institution is not an adverse action in the context of retaliation. (Docket Entry No. 63 at 7-8)

Relying on Davis v. Kelly, 160 F.3d 917, 920 (2d Cir. 1998), plaintiff argues that prison officials may not transfer an inmate in retaliation for exercising constitutional rights, and that doing so here constitutes an adverse action because the "medical staff at M.C.C.X. is poor." (Docket Entry No. 86-1 at 116-18) However, it is well settled in this circuit that inmate transfers between prisons within the same security levels "do not rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." Mandela v. Campbell, 1999 U.S. App. LEXIS 11118, at *8 (6th Cir. May 26, 1999); see also Friedmann v. Corrections Corp. of America, 11 Fed. Appx. 467, 469-70 (6th Cir. Apr. 26, 2001) (affirming district court's dismissal of claims of retaliation subsequent to inmate's transfer in response to his grievance activity." Indeed,

9

the court in Ward specifically held that prison officials may permissibly transfer an inmate simply "to give prison staff a respite from his continuous barrage of grievances," notwithstanding the fact that the prison to which plaintiff is being transferred "is less desirable than the facility from which [he] was transferred." Ward, 58 F.3d at 274-75.

Even if plaintiff's transfer were deemed to be an adverse action, plaintiff has still failed to establish a causal connection between his grievance and the transfer. As noted above, the ultimate decision makers testified that they knew nothing of plaintiff's grievance at the time they voted to transfer him. Plaintiff's reliance on TDOC policy requiring "[t]he chairperson [to] review all grievance[s] or complaints and forward them for action to the first line supervisors" does not provide "affirmative evidence" that the ultimate decision makers knew of his grievance or were "first line supervisors" in the chain of information flow. As such, plaintiff has failed to demonstrate a genuine issue of material fact with respect to causation.

In keeping with clearly established precedent in this circuit, the Magistrate Judge finds that plaintiff's transfer from CBCX was not an adverse action that would deter him from engaging in the prison grievance process, and, even if it were, plaintiff has failed to substantiate the alleged causal connection between that transfer and his exercise of the right to petition for redress of his grievances. Thus, plaintiff has failed to create a triable issue with respect to his claim of retaliation.

## Recommendation

For the reasons stated above, the Magistrate Judge recommends that defendants' motion for summary judgment be **GRANTED.**

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 4th day of June, 2014.

                                             s/ John S. Bryant
                                             JOHN S. BRYANT
                                             UNITED STATES MAGISTRATE JUDGE